**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-7239

PHILLIP VANCE SMITH, II,

        Petitioner - Appellant,

    v.

JOSH STEIN; ERIK A. HOOKS,

        Respondents - Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, Chief District Judge. (5:17-hc-02103-BO)

Submitted: November 2, 2020            Decided: December 3, 2020

Before NIEMEYER, MOTZ, and RICHARDSON, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Niemeyer and Judge Richardson joined.

Ashley P. Peterson, Brian D. Schmalzbach, MCGUIREWOODS LLP, Richmond, Virginia, for Appellant. Joshua H. Stein, Attorney General, Sandra Wallace-Smith, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

DIANA GRIBBON MOTZ, Circuit Judge:

Phillip Vance Smith, II, appeals the dismissal of his 28 U.S.C. § 2254 petition as untimely. Smith contends that *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), extended his limitations period by recognizing a new constitutional right retroactively applicable to cases on collateral review. *See* 28 U.S.C. § 2244(d)(1)(c). For the reasons that follow, we reject this argument and affirm the judgment of the district court.

I.

In 2001, Smith killed a man during the commission of a drug deal, and the State of North Carolina charged him with first-degree murder. At trial, Smith testified that he acted in self-defense. Prior to closing arguments, Smith's counsel told Smith that, given this trial testimony, counsel felt he "had no choice" but to tell the jury that Smith was guilty of felony murder. Smith contends, and Respondents do not contest, that Smith informed his lawyer that he "flat out" "did not agree with him telling the jury [Smith] was guilty of anything."

Defense counsel nevertheless told the trial court that he had "talked about it with Mr. Smith" and that Smith "ha[d] no objection to me arguing that he is in fact guilty as charged with respect to the felony murder aspect." When the trial court sought confirmation from Smith, he said, "if he has got to do it, he has got to do it. If he doesn't, I don't think he should." A bench conference followed, and the case proceeded to closing arguments, during which Smith's counsel did inform the jury that Smith was guilty of first-degree felony murder. The jury found Smith guilty of murder "[o]n the basis of malice,

2

premeditation, and deliberation," as well as felony murder. The court sentenced Smith to life imprisonment without the possibility of parole.

Smith filed a direct appeal, which the Supreme Court of North Carolina denied on December 4, 2003. On November 10, 2004, Smith filed a timely state postconviction motion for appropriate relief, which the North Carolina Superior Court denied. Smith did not appeal, and the Superior Court's decision became final on March 4, 2005.

In 2016, Smith filed a second motion for appropriate relief, raising four grounds, including the claim that his trial counsel provided ineffective assistance by admitting to the jury, without Smith's consent, that Smith was guilty of felony murder. The state trial court denied the motion, and the state appellate courts affirmed.

In 2017, Smith filed a federal habeas petition, again raising this claim. The district court denied the petition as untimely, and Smith noted this appeal.[1]

II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on all federal habeas petitions filed by persons in custody pursuant to the judgment of a state court. *See* 28 U.S.C. § 2244(d). Smith's statutory period under AEDPA began to run when Smith's conviction became final on March 3, 2004, 90 days after the Supreme Court of North Carolina denied his petition for discretionary review. *See* 28 U.S.C. § 2244(d)(1)(A). This one-year statute of limitations was briefly tolled when Smith sought further review in state court between November 2004

---

[1] We express our thanks to Smith's court-appointed appellate counsel, Ashley P. Peterson and Brian D. Schmalzbach, for their excellent briefs.

3

and March 2005, but the AEDPA statute of limitations ultimately expired on June 25, 2005. Because Smith did not file the instant petition until 2017, absent any extension in this limitations period, Smith's petition was untimely.

Smith argues that the Supreme Court's issuance of *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), provides the basis for such an extension of the limitations period. In *McCoy*, the Court held that the Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt. The *McCoy* Court explained that this right exists even when a defendant's counsel concludes that confessing guilt offers the defendant the best chance to avoid the death penalty.

McCoy had "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." *Id.* at 1505. But at the guilt phase, and again at the penalty phase, of McCoy's capital trial, the trial court permitted defense counsel to concede McCoy's guilt. *Id.* at 1506–07. The trial court reasoned that it was the attorney's task to determine how to best present his client's case. *Id.*

The Supreme Court rejected this rationale and reversed, holding that the right to counsel under the Sixth Amendment includes a right to "[a]utonomy to decide that the objective of the defense is to assert innocence." *Id.* at 1508. Although "[t]rial management is the lawyer's province," counsel is "still an assistant" to the defendant and "may not override [her client's objections] by conceding guilt." *Id.* 1508–09 (citation and internal quotation marks omitted). Therefore, once a defendant "communicate[s] [his objection] to court and counsel, . . . a concession of guilt should [be] off the table." *Id.* at 1512. The

4

Court further concluded that a violation of this right constitutes structural error and requires "a new trial without any need first to show prejudice." *Id.* at 1511.

Smith contends that *McCoy* recognized a new rule of constitutional law retroactively applicable to his case that effectively extended the AEDPA limitations period for one year. Federal law provides that the limitations period for a habeas petition runs from "the date on which the constitutional right asserted was initially recognized by the Supreme Court," but only "if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). Thus, to obtain the benefit of this limitations period, a habeas petitioner must demonstrate (1) that the Supreme Court recognized a new right; and (2) that the right has been made retroactively applicable to cases on collateral review. We turn to the question of whether Smith has made that showing.

### III.

The principles articulated in *Teague v. Lane*, 489 U.S. 288 (1989), and its progeny guide our analysis of this question. In *Teague*, the Supreme Court set forth the framework for determining whether a rule it has announced should be applied retroactively to final judgments in criminal cases. *Id.* at 310. Under *Teague*, "an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (citing *Griffith v. Kentucky*, 479 U.S. 314 (1987)). However, a "new rule" applies retroactively in a collateral proceeding if the rule is substantive, rather than procedural, or if it is a "'watershed rul[e] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal

5

proceeding." *Id*. (alteration in original) (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990)); *see also Teague*, 489 U.S. at 307. The parties recognize that the *McCoy* rule is not substantive. Accordingly, to be retroactively applicable it must be both a "new rule" and a "watershed rule."

A.

As to the first of these requirements, "a case announces a new rule if the result was not *dictated* by precedent," *Teague*, 489 U.S. at 301 — that is, the rule would not have been "apparent to all reasonable jurists," *Lambrix v. Singletary*, 520 U.S. 518, 528 (1997). "In general, . . . a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301.

Prior to *McCoy*, the Supreme Court had viewed a lawyer's concession of guilt as a tactical choice that counsel could make — in the absence of her client's consent — without exceeding constitutional limitations. In *Florida v. Nixon*, the Court had determined that the Constitution does *not* bar counsel from conceding a capital defendant's guilt at trial "when [the] defendant, informed by counsel, neither consents nor objects." 543 U.S. 175, 178 (2004).[2] Rejecting "a blanket rule demanding defendant's explicit consent," *Nixon* unanimously determined that such an admission was not automatically prejudicial ineffective assistance of counsel. *Id*. at 192.

_____

[2] The Supreme Court's decision in *Nixon* was issued in November 2004, a few months after Smith's conviction became final in March 2004. However, Smith maintains, and Respondents do not contest, that *Nixon* reflects the "legal landscape" that existed at the time of Smith's conviction. *See Beard v. Banks*, 542 U.S. 406, 411 (2004).

6

The *McCoy* Court specifically stated that *Nixon*'s holding was "not . . . contrary" to its holding because "Nixon never asserted" that he opposed counsel's proposed approach. 138 S. Ct. at 1509. This might suggest that the Court did not regard *McCoy* as recognizing a new rule. But the Supreme Court has explained that the fact that it has said a "decision is within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision, is not conclusive" as to whether the decision recognizes a new rule. *Butler v. McKellar*, 494 U.S. 407, 415 (1990). The *McCoy* majority did not cite any controlling precedent as dictating its holding. Moreover, unlike *Nixon*, which had followed the logic of *Strickland v. Washington*, 466 U.S. 668 (1984), *McCoy* rejected arguments that the ineffective-assistance-of-counsel line of cases governs when a client voices his objection. Instead, "[b]ecause a client's autonomy, not counsel's competence, is in issue," *McCoy* placed conceding guilt as among the types of decisions reserved for clients under the Sixth Amendment. 138 S. Ct. at 1511; *see also id.* at 1508–09 ("Some decisions [] are reserved for the client — notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal. Autonomy to decide that the objective of the defense is to assert innocence belongs in this . . . category.") (citation omitted).

*McCoy* might also be considered a new rule because it appears to have been "susceptible to debate among reasonable minds." *Butler*, 494 U.S. at 415. The Louisiana Supreme Court determined in *McCoy* itself that counsel had taken "a reasonable course of action," that "constitute[d] reasonable trial strategy." *State v. McCoy*, 218 So. 3d 535, 566, 572 (La. 2016). And Justice Alito noted in dissent, the *McCoy* rule appears to be a "newly

7

discovered constitutional right" that "made its first appearance," in that decision. 138 S. Ct. at 1514, 1518 (Alito, J., dissenting).

However, we need not here resolve this issue, *see, e.g.*, *United States v. Mathur*, 685 F.3d 396, 398–99 (4th Cir. 2012), because in all events *McCoy* did not establish a watershed rule.

B.

A watershed rule of criminal procedure is one that "requires the observance of 'those procedures that . . . are implicit in the concept of ordered liberty.'" *Teague*, 489 U.S. at 307 (alteration in original) (quoting *Mackey v. United States*, 401 U.S. 667, 693 (1971) (Harlan, J., concurring)). For a new procedural rule to be "watershed," it (1) "must be necessary to prevent an impermissibly large risk of an inaccurate conviction" and (2) "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Whorton*, 549 U.S. at 418 (internal quotation marks omitted).

The *McCoy* rule may well be necessary to prevent an impermissibly large risk of an inaccurate conviction. *McCoy* itself recognized that "a jury would almost certainly be swayed by a lawyer's concession of his client's guilt," and that "the effects of the admission would be immeasurable." *McCoy*, 138 S. Ct. at 1511. Indeed, the Supreme Court held the *McCoy* error structural, requiring a new trial in all cases on direct appeal. *Id.*; *see also Mickens v. Taylor*, 535 U.S. 162, 166 (2002) ("[W]here assistance of counsel has been denied entirely or during a critical stage of the proceeding . . . the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary."). Unlike cases in which procedural rights do not directly pertain to "accuracy in the fact-finding process," *see, e.g.*,

8

*Mathur*, 685 F.3d at 400, the denial of representation creates a risk of an unreliable verdict which "is intolerably high." *Whorton*, 549 U.S. at 419.

But the watershed-rule requirement instituted in *Teague* also demands that a new rule must alter our understanding of "essential" and "bedrock procedural element[s]." 489 U.S. at 315. It is "not enough" "[t]hat a new procedural rule is 'fundamental' in some abstract sense." *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004). Nor is it sufficient that a new rule "is *based on* a 'bedrock' right." *Whorton*, 549 U.S at 420–21. The requirement is "extremely narrow," *Schriro*, 542 U.S. at 352, and the Supreme Court has never found a new procedural rule to be "watershed" even though it has considered the question more than a dozen times. *See, e.g.*, *Whorton*, 549 U.S. at 418 (collecting cases).

The one decision that the Court has suggested "might fall within this exception" is *Gideon v. Wainwright*, 372 U.S. 335 (1963), which incorporated the Sixth Amendment right to counsel against the states and held that an indigent defendant in a criminal case has the right to have counsel appointed for him. *Beard*, 542 U.S. at 417. Before the institution of the "watershed" requirement in *Teague*, the Supreme Court repeatedly addressed rules derived from *Gideon* — like the right to counsel at plea hearings, the right to counsel at probation revocation hearings, the right to counsel on appeal, and the right to counsel at any prosecution leading to actual imprisonment — and held them retroactively applicable. *Arsenault v. Massachusetts*, 393 U.S. 5, 6 (1968); *McConnell v. Rhay*, 393 U.S. 2, 3–4 (1968); *Berry v. City of Cincinnati*, 414 U.S. 29, 29–30 (1973). But under the analysis required by *Teague*, *Gideon* itself seems to be the only example of a rule with sufficient "'primacy' and 'centrality'" to have possibly "effected a profound and 'sweeping' change"

9

justifying retroactive application. *Whorton*, 549 U.S. at 420 (quoting *Saffle*, 494 U.S. at 495; *Beard*, 542 U.S. at 418). As the Supreme Court has repeatedly stated, it is "unlikely" that any watershed rules "have yet to emerge." *Teague*, 489 U.S. at 313; *accord Schriro*, 542 U.S. at 352; *Tyler v. Cain*, 533 U.S. 656, 667, n.7 (2001); *Sawyer v. Smith*, 497 U.S. 227, 243 (1990).

To be sure, the *McCoy* rule shifts the balance of power between counsel and client and preserves an essential right for a defendant: the "right to make the fundamental choices about his own defense." 138 S. Ct. at 1511. And *McCoy*, of course, derives from *Gideon*. But, at bottom, *McCoy* presupposes what *Gideon* commanded — that a criminal defendant has a right to counsel in the first place. *McCoy* refines the *Gideon* rule, but it is an extension of a watershed rule rather than a watershed rule itself.

## IV.

For the foregoing reasons, we hold that the rule announced in *McCoy v. Louisiana*, 138 S. Ct. 1500, is not retroactively applicable on collateral review.[3] Accordingly, Smith's petition is untimely and the judgment of the district court is

*AFFIRMED.*

---

[3] Respondents argue that the rule announced in *McCoy* also does not assist Smith because (1) Smith testified that he shot the victim and (2) the *McCoy* rule arose in a death penalty case and Smith did not face capital punishment. Given our resolution of this appeal, we do not reach these issues.