# SUPREME COURT OF THE UNITED STATES

_____

No. 25–385 (25A378)

_____

## CHARLES RAY CRAWFORD _v._ MISSISSIPPI

### ON APPLICATION FOR STAY AND ON PETITION FOR A WRIT OF CERTIORARI TO THE SUPREME COURT OF MISSISSIPPI

[October 15, 2025]

The application for stay of execution of sentence of death presented to JUSTICE ALITO and by him referred to the Court is denied. The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN and JUSTICE JACKSON join, dissenting from the denial of application for stay and denial of certiorari.

Charles Ray Crawford will be executed tonight for a crime that his own lawyers told the jury he committed, despite his express instructions not to do so. Had this case come to this Court on direct appeal, Crawford could have proved that his Sixth Amendment rights were violated under our decision in _McCoy_ v. _Louisiana_, 584 U. S. 414 (2018), in which we held that lawyers may not override a defendant's explicit and unequivocal decision not to concede guilt at trial. He would also likely be entitled to a new trial, as a _McCoy_ violation is a structural error that mandates reversal.

Because Crawford's convictions became final before _McCoy_ was decided, however, this case raises a threshold issue that this Court has not squarely resolved: Whether _McCoy_ applies to cases on collateral review because it merely applied existing law, or whether _McCoy_ announced a nonretroactive "new" rule of constitutional law. This question has divided lower courts. It is also undoubtedly important, and is even more so in this case because its

answer determines whether Crawford will be executed. I would therefore grant Crawford's application for a stay of execution and petition for certiorari. As the Court abandons its duty to resolve this important question, I respectfully dissent.

## I

In September 1993, Crawford was indicted for murdering Kristy Ray. See *Crawford* v. *State*, 716 So. 2d 1028, 1031 (Miss. 1998). The State alleged that Crawford kidnapped, raped, and stabbed Ray. *Id.*, at 1031–1037. Crawford disputed these allegations and pleaded not guilty.

The trial court appointed two attorneys to assist Crawford in his defense. Crawford grew upset with his lawyers because he did not believe that they were adequately investigating the charges against him. He sent them several letters from jail urging them to do more. He described in detail the pretrial motions he wanted them to file, the lines of attack he wanted them to pursue, and the evidence he wanted them to put on, all in pursuit of showing at trial that the State did not prove each element of its case against him. See Exhs. F, J.[1]

Simply put, Crawford had one goal: to be found "not guilty." He instructed his counsel: "*Any* mistake, no matter how great or small, made by the prosecution in preparing its case against me must be brought before the court and put on record!" Exh. F, p. 12 (spelling corrected, emphasis in original). He also reminded his counsel: "Until all 12 members of a jury find me guilty beyond a *reasonable doubt* of *every* element of the crimes I've been charged with? I am still innocent!!" *Id.*, at 13 (spelling corrected, emphasis in original).

––––––––––
[1] Citations to exhibits are to the exhibits attached to Crawford's Petition for Post-Conviction Relief before the Mississippi Supreme Court, No. 2024–DR–01386–SCT (filed Dec. 12, 2024).

Crawford's lawyers did not listen. Not because they misunderstood Crawford, but because they chose not to. As one of the lawyers later attested, they knew full well that Crawford had "objected to the concession of his guilt and the pursuit of an insanity defense before and during trial." Exh. A, at 1. Even so, they did the exact opposite of what Crawford asked of them: They conceded to the jury that Crawford had killed Ray and pursued an insanity defense.

Crawford's lawyers' first concession came before the jury was even seated. During *voir dire*, they told potential jurors that "the State . . . will be primarily concerned almost exclusively with the 'what' of this case. What happened? . . . What did [Crawford] do?" Exh. M, at 309. They clarified, however, that the jurors should not "anticipate a defense or that the defense is going to be able to . . . prevent [the State] from showing that [Crawford] did in fact commit the acts that he is charged with. The 'what' is not going to be very much in question here." *Id.*, at 310. Crawford's lawyers repeated these points during opening arguments. See *id.*, at 415–416. During closing arguments, counsel again told the jury that "[t]he what of this case is not in question," because "[n]o one" other than Crawford "is legally responsible for what happened here." *Id.*, at 1179. Counsel also told the jury there was "certainly not" "any question" that he "is still dangerous to the community" and that he understood if the jurors thought Crawford was a "monster" who should not be "turn[ed] . . . loose." *Id.*, at 1189–1190.

Crawford vigorously objected to these concessions throughout trial. He told the judge: "I have got copies of letters here that I sent my attorneys and things that I wanted them to do . . . . They have not done them. They came here yesterday [and] told the jury that I was already guilty before the trial started and I do not recognize them as my attorneys any more." *Id.*, at 409. He also moved for a mistrial on the ground that "the jury was tainted from the

beginning" and had been further tainted by his counsel's repeated admissions of guilt. *Id.*, at 819–820. In his view, his lawyers "might as well [have] been sitting over there with the prosecution." *Id.*, at 820.

The trial judge overruled Crawford's objections and denied his motion for a mistrial. The jury convicted Crawford and sentenced him to death. The Mississippi Supreme Court affirmed Crawford's conviction and sentence in 1998. Crawford has continued to challenge his convictions and death sentence in both state and federal postconviction proceedings. See, *e.g.*, *Crawford* v. *State*, 867 So. 2d 196 (2003); *Crawford* v. *Epps*, 353 Fed. Appx. 977 (CA5 2009); *Crawford* v. *State*, 218 So. 3d 1142 (Miss. 2016); see also *Crawford* v. *Cain*, 122 F. 4th 158 (CA5 2024).

After the State moved for a death warrant, Crawford filed this postconviction motion before the Mississippi Supreme Court in December 2024. He claimed that, under *McCoy* v. *Louisiana*, 584 U. S. 414, his conviction must be vacated because his Sixth Amendment right to maintain his innocence was violated by his counsel's concessions of guilt at trial.

The Mississippi Supreme Court did not act on the motion for eight months. It then issued a death warrant for Crawford and a short order denying relief on the ground that Crawford's *McCoy* claim was barred. ___ So. 3d ___, ___, 2025 WL 2675597, *1 (Sept. 12, 2025); Pet. App. 5a–6a. It began by noting that Crawford's petition was subject to Mississippi's timeliness and successive-writ bars unless he could show that *McCoy* qualified as an "intervening decision" that exempted him from them. 2025 WL 2675597, *1; see Miss. Code Ann. §§99–39–5(2)(a)(i), 99–39–27(9) (1973–2020). It declined to apply that exception. It first explained that Crawford had "waited seven years to file this claim after the decision in *McCoy* was issued." 2025 WL 2675597, *1. It then held that "Crawford [had] not shown that *McCoy* should be given retroactive effect." *Ibid.* This petition for

a stay and petition for writ of certiorari followed less than three weeks later.

## II

As a threshold matter, Mississippi argues that we lack jurisdiction to hear this case because Crawford's motion was procedurally barred as untimely and successive under state law. Neither ground precludes review here.

This Court will not review a state-court decision that rests on adequate and independent state-law grounds. *Glossip* v. *Oklahoma*, 604 U. S. 226, 242 (2025). "A state ground of decision is independent only when it does not depend on a federal holding, and also is not intertwined with questions of federal law." *Ibid.* (citation omitted). A state-law ground's independence must be "'clear from the face of the opinion.'" *Ibid.* (quoting *Michigan* v. *Long*, 463 U. S. 1032, 1040–1041 (1983)).

The Mississippi Supreme Court's opinion is intertwined with federal law. It rejected the intervening-decision exception on the grounds that *McCoy* was not retroactive. 2025 WL 2675597, *1. That is a squarely federal issue, as "[t]he determination whether a constitutional decision of this Court is retroactive . . . is a matter of federal law." *American Trucking Assns., Inc.* v. *Smith*, 496 U. S. 167, 177 (1990) (plurality opinion); *Harper* v. *Virginia Dept. of Taxation*, 509 U. S. 86, 100 (1993) ("The Supremacy Clause does not allow federal retroactivity doctrine to be supplanted by the invocation of a contrary approach to retroactivity under state law" (citation omitted)); *Yates* v. *Aiken*, 484 U. S. 211, 214–218 (1988).

The State contends that the intervening-decision exception does not turn on whether a rule is retroactive but turns instead on a state-law determination whether McCoy qualified as an "intervening decisio[n]" that "'would have actually adversely affected'" Crawford's case. Brief in Opposition 19. That reasoning, however, appears nowhere on the

face of the Mississippi Supreme Court's opinion, see 2025 WL 2675597, *1, and so it does not bar our review here, see *Long*, 463 U. S., at 1040–1041. In any event, whether *McCoy* would have affected Crawford's conviction necessarily depends on federal law because a *McCoy* violation is a structural error that automatically entitles a defendant to a reversal of his conviction. See 584 U. S., at 427–428.

To be sure, the Mississippi Supreme Court also observed that Crawford did not file this motion until seven years after *McCoy* was decided. 2025 WL 2675597, *1. It is not clear that the court rejected Crawford's claim on this basis, so it cannot independently support the judgment below. See, *e.g.*, *Long*, 463 U. S., at 1040–1401. Nor does the State's opposition argue that this delay alone deprives the Court of jurisdiction. That is not surprising, as the Mississippi Supreme Court has long recognized that state law specifies no "time limitation in which to file a second or successive application if such application meets one of the statutory exceptions," such as the intervening-decision exception. See *Bell* v. *State*, 66 So. 3d 90, 93 (2011) (granting relief on a motion filed eight years after the intervening decision from this Court on which the motion was based). We thus have jurisdiction.

## III

To grant a stay, this Court must find a reasonable probability that the Court would vote to grant certiorari, a significant possibility of reversal, and a likelihood of irreparable injury to the applicant without a stay. *Barefoot* v. *Estelle*, 463 U. S. 880, 895 (1983). Crawford's application meets these criteria. There is no question that Crawford will suffer irreparable harm if he is executed before the weighty constitutional issues he raises are resolved. As for the other factors, the Mississippi Supreme Court's retroactivity holding warrants this Court's review because it implicates a split among the lower courts on an important constitutional

issue. Crawford has also shown a significant possibility of reversal because the decision below is deeply flawed. Finally, although Crawford did not raise his *McCoy* claim until after the State sought a death warrant, that delay does not require denial here.

A

First, this case warrants our review because it implicates a split among the lower courts on an important issue that will decide whether Crawford lives or dies: Whether *McCoy* is retroactive and applies to individuals like Crawford who are litigating their claims in the postconviction setting.

At the outset, a case decided after a conviction becomes final applies retroactively if it either (1) merely applied settled law to a new factual context or (2) announced a "new" substantive rule of law that removed certain conduct from criminal prohibition. *Chaidez* v. *United States*, 568 U. S. 342, 347–348, and n. 3 (2013). A new procedural rule will not be given retroactive effect. *Edwards* v. *Vannoy*, 593 U. S. 255, 273 (2021).

Courts have come to different conclusions over where *McCoy* falls within this framework. Two courts hold that *McCoy* applies retroactively because it did not announce a new rule of constitutional law. In their view, *McCoy* applied pre-existing precedents to a new factual circumstance. See *In re Smith*, 49 Cal. App. 5th 377, 390–392, 263 Cal. Rptr. 3d 63, 73–74 (2020) (explaining that *McCoy* did not announce a new rule); *Jan G.* v. *Commissioner of Correction*, 2023 WL 8431827, *18–*20 (Conn. Super. Ct., Nov. 20, 2023) (same).

The Mississippi Supreme Court, on the other hand, held in this case that *McCoy* is not retroactive, apparently on the ground that *McCoy* announced a new rule that is procedural and not substantive. See 2025 WL 2675597, *1; see also Miss. Motion to Dismiss in No. 2024–DR–01386–SCT 7 (arguing that *McCoy* announced a nonretroactive new rule).

The Fourth Circuit has also suggested, though it did not decide, that "*McCoy* might . . . be considered a new rule." *Smith* v. *Stein*, 982 F. 3d 229, 234 (2020).

This split goes to the heart of defendants' Sixth Amendment rights to control their own defense. As we explained in *McCoy*, depriving a defendant of his "Sixth Amendment-secured autonomy" violates "the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." 584 U. S., at 427 (internal quotation marks omitted). It also causes "immeasurable" harm to a defendant, because "a jury would almost certainly be swayed by a lawyer's concession of his client's guilt." *Id.*, at 428.

The importance of the question whether *McCoy* is retroactive is on full display in this case. *McCoy* violations are so antithetical to the Sixth Amendment that they are treated as "structural" errors "not subject to harmless-error review." *Id.*, at 427. Accordingly, if Crawford prevails on his *McCoy* claim, he would be automatically entitled to reversal of his conviction and sentence and would not be facing execution tonight.

The Court's review is needed to resolve the lower courts' disagreement on this fundamental question. Indeed, this Court routinely grants certiorari on important questions in capital cases without any split at all.[2]

## B

Second, Crawford has shown a significant possibility of reversal. Mississippi now correctly concedes before this Court that *McCoy is* retroactive because the rule it applied is not new. And if *McCoy* retroactively applies to

---

[2] See, *e.g.*, Pet. for Cert., *Ramirez* v. *Collier*, No. 21-5592 (U. S. Sept. 7, 2021) (no split); Pet. for Cert., *Gutierrez* v. *Saenz*, No. 19–8695 (U. S. June 15, 2020) (no split); see also Pet. for Cert. 17–19, *Glossip* v. *Oklahoma*, No. 22-7466 (U. S. May 4, 2023) (alleging a shallower split than the one present here).

Crawford's case, then relief is warranted because it was clearly violated at Crawford's trial.

1

As mentioned, cases applying old rules to a new context are retroactive, and cases applying new rules are not retroactive unless they are substantive. *Chaidez,* 568 U. S., at 347–348, and n. 3. A case "does not announce a new rule when it is merely an application of the principle that governed a prior decision to a different set of facts." *Id.*, at 347–348 (brackets, emphasis, and quotation marks omitted). "[W]here the beginning point of our analysis is a rule of general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent." *Id.*, at 348 (quotation marks omitted).

As Mississippi now recognizes, *McCoy* readily qualifies as an old rule because it "did not . . . change the landscape of Sixth Amendment claims about the right to make a defense." Brief in Opposition 17. The Sixth Amendment guarantees a criminal defendant the "assistance of counsel for his defence." The right to counsel is "personal" because it is "the defendant, and not his lawyer," who "will bear the personal consequences of a conviction." *Faretta* v. *California*, 422 U. S. 806, 834 (1975). The defendant's "choice" in exercising that right "must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Ibid.* (quoting *Illinois* v. *Allen*, 397 U. S. 337, 350–351 (1970) (Brennan, J., concurring)); see *Gannett Co.* v. *DePasquale*, 443 U. S. 368, 382, n. 10 (1979) ("[T]he [Sixth] Amendment . . . contemplat[es] a norm in which the accused, and not a lawyer, is master of his own defense"). Consistent with the basic principle that the accused is in control of his own defense, the Court has long recognized that attorneys may not override "certain fundamental decisions" made by the

defendant, such as "whether to plead guilty, waive a jury, testify in his or her own behalf, [] take an appeal," or even "act as his or her own advocate." *Jones* v. *Barnes*, 463 U. S. 745, 751 (1983); see *Brookhart* v. *Janis*, 384 U. S. 1, 7 (1966).

*McCoy*'s holding directly followed from the Court's prior cases such as *Faretta* and *Jones*. "Just as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against [him], or reject the assistance of legal counsel despite the defendant's own inexperience," so too may a defendant "insist on maintaining [his] innocence." *McCoy*, 584 U. S., at 422. That is because "[t]hese are not strategic choices about how best to *achieve* [his] objectives" but rather "choices about what [his] objectives in fact *are*." *Ibid.* (emphasis in original). Indeed, for decades prior to *McCoy*, the clear consensus among lower courts was that a defendant has the right to insist on his innocence and that the attorney cannot override that choice.[3] Before Crawford's conviction in this case, moreover, the American Bar Association's Model Rules of Professional Conduct specified that "[a] lawyer shall abide by a client's decisions concerning the objectives of representation." Am. Bar. Assn., Model Rules of Prof. Conduct R. 1.2(a) (1989).

In view of all these pre-*McCoy* authorities, Crawford has a strong argument that *McCoy*'s holding was nothing new and that it therefore should apply to his case.

### 2

If *McCoy* does apply to Crawford's case on postconviction review, then there is little question that Crawford is

---

[3] See, *e.g.*, *Wiley* v. *Sowders*, 647 F. 2d 642, 650 (CA6 1981); *Francis* v. *Spraggins*, 720 F. 2d 1190, 1194–1195 (CA11 1983); *State* v. *Anaya*, 592 A. 2d 1142, 1145–1146 (N. H. 1991); *State* v. *Carter*, 14 P. 3d 1138, 1148 (Kan. 2000); *Cooke* v. *State*, 977 A. 2d 803, 849–850 (Del. 2009); *People* v. *Bergerud*, 223 P. 3d 686, 699 (Colo. 2010); cf. *Jones* v. *State*, 877 P. 2d 1052, 1056–1057 (Nev. 1994); *State* v. *Harbison*, 337 S. E. 2d 504, 506–507 (N. C. 1985).

entitled to relief because Crawford's Sixth Amendment rights were violated at his trial. Crawford was unequivocal in defining the goal of his defense: to maintain his innocence and require the Government to prove each element of its case against him. His attorneys took the opposite approach. They told the jury at every step of the trial, from jury selection through closing arguments, that the State was right and that Crawford killed Ray. The record could not be clearer that what Crawford defined, his counsel defied.

Resisting this conclusion, the State contends that defense counsel did not concede guilt because counsel pursued an insanity defense, which technically results in an acquittal. That hair-splitting argument misses the mark entirely. See *United States* v. *Read*, 918 F. 3d 712, 719–721 (CA9 2019) (rejecting this argument). First, we made clear in *McCoy* that a defendant has a constitutional right "to decide that the objective of [his] defense is to assert *innocence*," not just to obtain a technical acquittal. 584 U. S., at 422 (emphasis added). Second, the difference between a verdict of "not guilty" and a verdict of "not guilty by reason of insanity" is highly consequential. The former is an exoneration; the latter leads to a defendant's commitment at a state psychiatric hospital. See Miss. Code Ann. §99-13-7(1); Ex. M, at 1190–1191 (defense counsel stating during closing argument that there is "certainly not" "any question . . . that Charles Ray Crawford is still dangerous to the community" and should not be "put . . . on the street"). The right to direct the goals of one's criminal defense plainly includes the right to decide whether to pursue freedom rather than confinement.

Crawford's lawyers, however, deprived him of that basic right. And because the Court declines to act, Crawford will be sent to his death without ever having had a real opportunity to hold the State to its burden of proving his guilt.

3

Finally, without doubt, Crawford could have brought his *McCoy* claim earlier and before the State sought a death warrant. As the Court has acknowledged, granting a stay in late-stage capital litigation, especially when a litigant could have asserted his claim earlier, is generally disfavored. *Gomez* v. *United States Dist. Court for Northern Dist. of Cal.*, 503 U. S. 653, 654 (1992) (*per curiam*).

Crawford's delay, however, is not disqualifying in this case. That is because Mississippi law did not require Crawford to litigate this claim any sooner. As the Mississippi Supreme Court observed in 2011, Mississippi law does not impose a filing deadline on a successive habeas petition filed after an intervening decision. *Bell*, 66 So. 3d, at 93. In the 14 years since then, Mississippi has not amended its law to impose one. The State also cites no cases in which the Mississippi Supreme Court denied relief on timeliness grounds despite a qualifying intervening decision.

Given Mississippi's failure to protect its own interest in finality, I would not deny this petition simply because Crawford could have filed it earlier, especially considering the other factors that strongly weigh in favor of granting relief. I would instead exercise our broad discretion to stay Crawford's execution, resolve this important question, and fulfill "our duty to search for constitutional error with painstaking care [which] is never more exacting than it is in a capital case." *Kyles* v. *Whitley*, 514 U. S. 419, 422 (1995) (quotation marks, brackets omitted); cf. *Shinn* v. *Martinez Ramirez*, 596 U. S. 366, 375, n. 1 (2022) (choosing to forgive the State's forfeiture of an argument in a capital case).

\* \* \*

Charles Ray Crawford has identified an important constitutional issue that this Court has not addressed and has divided courts around the country. The Court refuses to

SOTOMAYOR, J., dissenting

resolve that question, even though a man's life is in the balance.  For these reasons, the Court should have granted Crawford's motion for a stay of execution and petition for writ of certiorari.  I respectfully dissent.