**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2224-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARIO GAYLES, a/k/a
GAYLES MARIO, AMEIR
CONNEL and MARIO
GILLS,

    Defendant-Appellant.

_____

Submitted September 23, 2025 – Decided October 24, 2025

Before Judges Gooden Brown and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-02-0637.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Mark Zavotsky, Designated Counsel, on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Hannah F. Kurt, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Mario Gayles appeals from the December 8, 2023 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. Based on the record and the applicable legal principles, we affirm.

I.

Following a 2017 jury trial, defendant was convicted of first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a). In 2018, he received an aggregate sentence of life in prison, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

The convictions stemmed from defendant fatally shooting a drug dealing associate on July 15, 2015, after a physical altercation on the street during which the associate assaulted defendant. After the assault, defendant left the area only to return shortly thereafter and shoot the victim multiple times before fleeing on foot. The State's proofs included testimony from two eyewitnesses, F.W.[1] and the owner of a nearby pizzeria, both of whom had known defendant and the

---

[1] We use initials to protect the confidentiality of the witness.

victim for nearly two decades, as well as surveillance footage from multiple angles, including one that captured the shooting.

We affirmed defendant's convictions and sentence in an unpublished opinion, and the Supreme Court denied certification. State v. Gayles, No. A-4010-17 (App. Div. Aug. 4, 2020), certif. denied, 244 N.J. 433 (2020). In our unpublished opinion, we indicated that defendant's statement to detectives was admitted at trial. Gayles, slip op. at 2. In the statement, defendant admitted selling drugs with the victim and having disagreements with him over money, but denied shooting him. Ibid. In contrast, although defendant elected not to testify at trial, his defense was that he "committed passion/provocation manslaughter, not murder." Id. at 12.

We also recounted that during F.W.'s trial testimony, she described observing "defendant shoot [the victim]" while she was "walking to the store to get cigarettes." Id. at 6. She further testified that "earlier in the afternoon on the day of the shooting, while she and defendant were in the car of a mutual friend, defendant started 'fussing' about [the victim], saying that he was 'tired of him' and that he was 'going to kill him.'" Id. at 7.

In the opinion, we addressed defendant's argument that "the State deprived him of a fair trial by failing to disclose correspondence received from a

A-2224-23

behavioral healthcare facility until one day before the jury returned its verdict." Id. at 55. "The correspondence related that [F.W.] was suffering from 'suicidal ideation' when she was admitted into their program in May 2017, some four months before the trial." Ibid. Defendant characterized the evidence as "both exculpatory and newly discovered." Ibid.

In rejecting defendant's argument, we explained:

> [D]efendant failed to establish that the evidence constitutes either exculpatory or newly discovered evidence to meet either standard. Significantly, even assuming delayed disclosure and the potential to impeach [F.W.'s] credibility, given the overwhelming evidence of defendant's guilt, we are satisfied that the result of the proceeding would have been no different.
>
> [Id. at 57.]

Defendant filed a timely PCR petition, which was supplemented by assigned counsel, arguing ineffective assistance of trial counsel. Defendant asserted his trial attorney was ineffective for not fully investigating F.W. prior to trial to obtain the psychiatric reports that were not turned over until one day before the verdict was rendered. According to defendant, had counsel obtained the reports earlier, they could have been used during F.W.'s cross-examination. In a supplemental verified petition and brief, among other things, defendant argued his trial attorney committed structural error by disregarding his claims

of innocence and conceding his guilt to the jury. He asserted that "despite [his] repeated requests . . . to do so," his attorney refused to argue his innocence to the jury as required under the new rule of constitutional law announced in McCoy v. Louisiana, 584 U.S. 414 (2018).

In support, defendant averred:

> Prior to the trial, and during the trial itself, I told my attorney many times that I was innocent of the charges against me. I acted in self[-]defense and in fear for my life. I was going to be killed that night by [the victim] and the only reason I shot him was because he was going to kill me.
>
> . . . My attorney argued with me several times about how to present the case to the jury and told me that she was going to argue differently. She told me that she was going to argue for a passion/provocation defense. I objected and told her that I was innocent, that I do not believe I acted in a passion or provocation manner, but instead, I was acting in self-defense. Again, I told her that I was in imminent fear for my life and believed that [the victim] was going to kill me.
>
> . . . My attorney told me that she was in charge of how to try the case and that she was the one who made decisions such as these. She told me that she was going to argue to the jury in a way that she believed gave me the best chance at a not guilty verdict.

After hearing argument, the PCR judge entered an order on December 8, 2023, denying defendant's PCR petition without an evidentiary hearing. In a supporting written decision, after reciting the facts and procedural history of the

5

case and detailing the applicable legal principles, the judge determined defendant's claims were both procedurally barred and substantively meritless.

Specifically, the judge described defendant's argument that trial counsel failed to investigate F.W.'s mental health prior to trial as "speculative at best" and procedurally barred by Rule 3:22-5 because this court had already rejected essentially the same argument on direct appeal. On the merits, the judge explained that an investigation "would not have materially impacted the overall determination of his guilt due to the overwhelming amount of credible evidence presented against him." The judge also pointed out that defendant "offer[ed] no information or arguments that the credibility of this single witness would have outweighed the clear video footage of the offense, nor the testimony of the other witnesses presented at trial."

Regarding the rule announced in McCoy, the judge determined McCoy did not apply retroactively to cases on collateral review, as here. Further, according to the judge, Rule 3:22-4 procedurally barred defendant from making the argument because inasmuch as McCoy was decided over two years before this court affirmed defendant's convictions and sentence, the argument "could have readily been asserted whilst this matter was on direct appeal." On the merits, the judge found McCoy was distinguishable. The judge explained that

6

the defendant in <u>McCoy</u> "adamantly denied involvement in the murder and 'vociferously' and repeatedly objected to his counsel's concession of guilt on the record." "Moreover, the evidence before the Court in <u>McCoy</u> was not found to have otherwise so conclusively weighed against a colorable claim of innocence."

In contrast, according to the judge, defendant here "did not steadfastly maintain his innocence at any point during the trial, let alone in a manner so strong as to find [t]rial [c]ounsel's tactical decisions in his defense amounted to structural error requiring a new trial." The judge expounded:

> The facts [adduced] at trial and otherwise currently before th[e] [c]ourt in no way support [defendant]'s contentions that he had conclusively intended to assert he was not guilty of any of the charged offenses. To be sure, prior to his commission of the underlying offenses, [defendant] told . . . [F.W.] that he "was going to kill [the victim]" before doing just that. [Defendant] also was identified by multiple witnesses as the assailant in the video footage recovered from multiple locations near the crime scene by [a detective].
>
> Moreover, [defendant] heard the opening statement of his attorney, who conceded . . . [defendant] shot the victim, but argued the offense was committed in the heat of passion following a fistfight. [Defendant] knew—at least from that point on, if not beforehand—of the legal strategy to be employed in his defense. At no point in the trial did [defendant] interject to voice his disapproval of this strategy, despite his numerous opportunities to do so . . . .

A-2224-23

This appeal followed.

On appeal, defendant raises the following Points for our consideration:

POINT I

DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO CONDUCT A MINIMAL INVESTIGATION OF STATE'S WITNESS [F.W.]

POINT II

APPELLATE COUNSEL WAS INEFFECTIVE ON DIRECT APPEAL FOR FAILING TO RAISE THE ARGUMENT [THAT] TRIAL COUNSEL COMMITTED STRUCTURAL ERROR, IN LIGHT OF THE [U.S.] SUPREME COURT HOLDING IN MCCOY V. LOUISIANA, 584 U.S. 414 (2018), WHEN SHE CONCEDED DEFENDANT'S GUILT TO THE JURY AGAINST HIS EXPRESS WISH NOT TO DO SO. (NOT RAISED BELOW).

POINT III

DEFENDANT'S PETITION FOR POST CONVICTION RELIEF SHOULD NOT BE BARRED BECAUSE DEFENDANT'S CLAIM OF TRIAL COUNSEL'S FAILURE TO INVESTIGATE A STATE'S KEY WITNESS WAS NOT EXPRESSLY ADJUDICATED BY THE APPELLATE DIVISION . . . .

II.

We begin by setting out the guideposts that inform our review. "We review the legal conclusions of a PCR judge de novo," State v. Reevey, 417 N.J.

Super. 134, 146 (App. Div. 2010), but "review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing," State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "[W]here . . . no evidentiary hearing was conducted," as here, "we may review the factual inferences the [trial] court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (citing State v. Harris, 181 N.J. 391, 420-21 (2004)).

An evidentiary hearing is only required when (1) a defendant establishes "a prima facie case in support of [PCR]," (2) the court determines that there are "material issues of disputed fact that cannot be resolved by reference to the existing record," and (3) the court determines that "an evidentiary hearing is necessary to resolve the claims" asserted. State v. Porter, 216 N.J. 343, 354 (2013) (alteration in original) (quoting R. 3:22-10(b)); see also R. 3:22-10(e)(2) (providing "[a] court shall not grant an evidentiary hearing . . . if the defendant's allegations are too vague, conclusory[,] or speculative"). Indeed, "'[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted.'" Brewster, 429 N.J. Super. at 401 (omission in original) (quoting State v. Marshall, 148 N.J. 89, 158 (1997)).

"To establish a prima facie case, [a] defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b). Moreover, a defendant must make this showing "by a preponderance of the credible evidence." State v. Goodwin, 173 N.J. 583, 593 (2002).

Rule 3:22-2 recognizes five cognizable grounds for PCR, including a "[s]ubstantial denial in the conviction proceedings of [a] defendant's [constitutional] rights," R. 3:22-2(a), which encompasses the Sixth Amendment right to the effective assistance of counsel at issue in this appeal, State v. Nash, 212 N.J. 518, 541-42 (2013). To establish a prima facie claim of the denial of the effective assistance of counsel as contemplated under R. 3:22-2(a), a defendant must demonstrate that the performance of counsel fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687-88 (1984), and adopted in State v. Fritz, 105 N.J. 42, 49-58 (1987), and that the outcome would have been different without the purported deficient performance. Stated differently, a defendant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.

To satisfy the first prong, a defendant must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment" and "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. "[I]n making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689. As such, a defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

"Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999) (citing State v. Davis, 116 N.J. 341, 357 (1989)). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. For that reason,

> an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with . . . [defense] counsel's exercise of judgment during the trial. The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the

11

> context of the State's evidence of defendant's guilt. As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal "except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of [a] fair trial."
>
> [State v. Castagna, 187 N.J. 293, 314-15 (2006) (second alteration in original) (citations omitted) (quoting State v. Buonadonna, 122 N.J. 22, 42 (1991)).]

Still, "[a]n ineffective assistance of counsel claim may occur when counsel fails to conduct an adequate pre-trial investigation[,]" including interviewing potential witnesses. Porter, 216 N.J. at 352-53 (citing State v. Savage, 120 N.J. 594, 621-22 (1990)). Indeed, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. "In evaluating whether defense counsel has satisfied the duty to make reasonable investigations, the reviewing court must apply 'a heavy measure of deference to counsel's judgments.'" State v. Chew, 179 N.J. 186, 217 (2004) (quoting Strickland, 466 U.S. at 691). Thus, "when a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (citing R. 1:6-6).

To satisfy the second <u>Strickland</u>/<u>Fritz</u> prong, "[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached." <u>Chew</u>, 179 N.J. at 204 (citing <u>Strickland</u>, 466 U.S. at 694).  This prong generally requires that a defendant establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S. at 694.

Failure to meet either prong of the two-pronged <u>Strickland</u>/<u>Fritz</u> test results in the denial of a petition for PCR.  <u>State v. Parker</u>, 212 N.J. 269, 280 (2012) (citing <u>State v. Echols</u>, 199 N.J. 344, 358 (2009)).  That said, "courts are permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without determining whether counsel's performance was constitutionally deficient."  <u>State v. Gaitan</u>, 209 N.J. 339, 350 (2012) (citation omitted) (citing <u>Strickland</u>, 466 U.S. at 697).

In 2018, the United States Supreme Court announced a new rule of constitutional law cognizable in a PCR proceeding.  "In <u>McCoy</u>, the Court held that the Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt."  <u>Smith v. Stein</u>, 982 F.3d 229, 232 (4th Cir. 2020).  The <u>McCoy</u> Court explained that this right exists "even when counsel's experienced-based view is

A-2224-23

that confessing guilt offers the defendant the best chance to avoid the death penalty." McCoy, 584 U.S. at 417.

McCoy was charged with the murder of "the mother, stepfather, and son" of his "estranged wife." Id. at 418.

> McCoy had "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt."[2] But at the guilt phase, and again at the penalty phase, of McCoy's capital trial, the trial court permitted defense counsel to concede McCoy's guilt.[3] The trial court reasoned that it was the attorney's task to determine how to best present his client's case.
>
> The Supreme Court rejected this rationale and reversed, holding that the right to counsel under the Sixth Amendment includes a right to "[a]utonomy to decide that the objective of the defense is to assert innocence." Although "[t]rial management is the lawyer's province," counsel is "still an assistant" to the defendant and "may not override [her client's objections] by conceding guilt." Therefore, once a defendant "communicate[s] [his objection] to court and counsel, . . . a concession of guilt should [be] off the table." The Court further concluded that a violation of

---

[2] Indeed, "[t]hroughout the proceedings, [McCoy] insistently maintained he was out of [s]tate at the time of the killings and that corrupt police killed the victims when a drug deal went wrong." McCoy, 584 U.S. at 418.

[3] During trial counsel's opening statement at the guilt phase of the trial, McCoy protested to the court "out of earshot of the jury," telling the court his attorney "was 'selling [him] out' by maintaining that McCoy 'murdered [his] family.'" McCoy, 584 U.S. at 419 (alterations in original).

this right constitutes structural error and requires "a new trial without any need first to show prejudice."

> [Smith, 982 F.3d at 232 (alterations in original) (citations omitted) (quoting McCoy, 584 U.S. at 417-28).]

In so holding, the McCoy Court distinguished Florida v. Nixon, 543 U.S. 175 (2004), where the Court had "considered whether the Constitution bar[red] defense counsel from conceding a capital defendant's guilt at trial 'when [the] defendant, informed by counsel, neither consent[ed] nor object[ed.]'" McCoy, 584 U.S. at 417 (second alteration in original) (quoting Nixon, 543 U.S. at 178). "In that case, defense counsel had several times explained to the defendant a proposed guilt-phase concession strategy, but the defendant was unresponsive." Ibid. (citing Nixon, 543 U.S. at 186). The Court "held that when counsel confers with the defendant and the defendant remains silent, neither approving nor protesting counsel's proposed concession strategy, '[no] blanket rule demand[s] the defendant's explicit consent' to implementation of that strategy." Ibid. (alterations in original) (citation omitted) (quoting Nixon, 543 U.S. at 181, 192).

In expounding on the distinction between the two cases, the McCoy Court stated:

> Nixon's attorney did not negate Nixon's autonomy by overriding Nixon's desired defense objective, for Nixon never asserted any such objective. Nixon "was

15

generally unresponsive" during discussions of trial strategy, and "never verbally approved or protested" counsel's proposed approach. Nixon complained about the admission of his guilt only after trial. McCoy, in contrast, opposed [trial counsel]'s assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court. If a client declines to participate in his defense, then an attorney may permissibly guide the defense pursuant to the strategy she believes to be in the defendant's best interest. Presented with express statements of the client's will to maintain innocence, however, counsel may not steer the ship the other way.

[Id. at 424 (citations omitted).]

In considering such claims, the McCoy Court explained that "[b]ecause a client's autonomy, not counsel's competence, is in issue," ineffective-assistance-of-counsel (IAC) jurisprudence does not apply. Id. at 426. Instead, a "[v]iolation of a defendant's Sixth Amendment-secured autonomy ranks as [structural] error" and "when present, such an error is not subject to harmless-error review." Id. at 427. Cf. Nixon, 543 U.S. at 178 (analyzing under Strickland's IAC test defense counsel's concession of guilt in a capital murder trial without the defendant's express consent).

Applying these principles, we are satisfied defendant failed to establish a prima facie IAC claim in connection with trial counsel's purported failure to investigate F.W.'s mental health prior to trial, and we discern no abuse of

16

discretion in the judge's failure to conduct an evidentiary hearing on the issue. In reaching this decision, we conclude defendant failed to satisfy the prejudice prong of the Strickland/Fritz test without determining whether counsel's performance was constitutionally deficient.

Defendant argues "[h]ad counsel investigated and challenged the reliability of . . . [F.W.'s] testimony, it is likely her testimony would have been stricken altogether, or at minimum, it could have been made apparent to the jury that her testimony was untrustworthy." However, as we pointed out in our unpublished opinion affirming defendant's convictions, "given the overwhelming evidence of defendant's guilt," the result of the proceeding would have been no different without F.W.'s testimony or if her testimony had been discredited based on her mental health history. Gayles, slip op. at 57.

We reject defendant's contention "that, but for [F.W.'s] testimony, the State would have failed to prove the necessary intent required for [first]-degree murder." The surveillance video depicting the shooting showed defendant "leaving the area and going 'around the corner'" following the physical altercation with the victim. Id. at 9. "'[A] minute or so later,'" defendant returned with a handgun and shot the victim multiple times. Id. at 9-10. The victim "was pronounced dead at the scene" and the "subsequent autopsy revealed

17

a total of 'nine' gunshot wounds." Id. at 8. See State v. Foglia, 415 N.J. Super. 106, 126 (App. Div. 2010) ("To be sure, 'the State must prove beyond a reasonable doubt that defendant had not killed his victim in the heat of passion caused by a reasonable provocation[,]' in order to secure a murder conviction." (alteration in original) (quoting State v. Viera, 346 N.J. Super. 198, 212 (App. Div. 2001))).

We also reject defendant's contention that the new rule announced in McCoy entitled him to a new trial.[4] In support, defendant asserts he "consistently expressed to counsel not to concede that he was guilty of any form of homicide" and wished instead "to assert his innocence and put forth his

---

[4] For the first time on appeal, defendant argues his appellate attorney was ineffective for failing to raise the McCoy issue in his direct appeal. "Generally, an appellate court will not consider issues, even constitutional ones, which were not raised below" unless it goes to the question of jurisdiction or presents a matter of real public importance. State v. Galicia, 210 N.J. 364, 383 (2012) (citing Deerfield Estates, Inc. v. E. Brunswick, 60 N.J. 115, 120 (1972)). Parties must present issues "'when an opportunity for such a presentation is available'" so that the trial court can rule on them in a timely manner. State v. Witt, 223 N.J. 409, 419 (2015) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)). Because defendant failed to raise the issue to the PCR judge and it involves neither a question of jurisdiction nor a matter of public importance, we decline to consider the argument in the first instance.

defense of self-defense." Assuming without deciding that <u>McCoy</u> applies,[5] unlike the defendant in <u>McCoy</u>, defendant never communicated any objection to the court once trial counsel conceded his guilt to passion/provocation manslaughter in her opening statement. <u>See McCoy</u>, 584 U.S. at 419-20. Nor did defendant express any objection to his attorney's concession at any point throughout the trial proceedings. Instead, like the defendant in <u>Nixon</u>, defendant only complained after he was convicted. <u>See Nixon</u>, 543 U.S. at 181-85. Because this is not a case where the defendant maintained an "intransigent and unambiguous objection" to his attorney conceding guilt, <u>McCoy</u>, 584 U.S. at 420, we are not convinced defendant established a Sixth Amendment violation entitling him to a new trial.

Based on our decision, we need not address defendant's arguments that he was not procedurally barred from raising these claims.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

---

[5] Although there are currently no New Jersey published decisions addressing whether <u>McCoy</u> is to be given retroactive application, federal courts have declined to apply <u>McCoy</u> retroactively to collateral challenges. <u>See Stein</u>, 982 F.3d at 231 (rejecting a defendant's invitation to "recogniz[e] a new constitutional right [as] retroactively applicable to cases on collateral review"); <u>Christian v. Thomas</u>, 982 F.3d 1215, 1225 (9th Cir. 2020) (concluding that "the Supreme Court has not made <u>McCoy v. Louisiana</u> retroactive to cases on collateral review").